# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| AMAZON.COM, INC., a Delaware corporation; and DUTCH BLITZ ACQUISITION CORPORATION, a Pennsylvania corporation,<br><br>              Plaintiffs,<br>   v.<br><br>TIAN RUIPING, an individual, d/b/a REAL VIOLET, et al.,<br><br>              Defendants. | CASE NO. 2:21-cv-00159-TL<br><br>(Consolidated with 2:21-cv-00160, 2:21-cv-00161, 2:21-cv-00162)<br><br>ORDER DENYING PLAINTIFFS' *EX PARTE* MOTION FOR ALTERNATIVE SERVICE |

This matter comes before the Court on Plaintiffs' *Ex Parte* Motion for Alternative Service (the "Motion"). Dkt. No. 16. Having considered the relevant record and having found this matter suitable for decision without oral argument, *see* Fed. R. Civ. P. 78(b), the Court hereby DENIES without prejudice the Motion for the reasons explained below.

ORDER DENYING PLAINTIFFS'
EX PARTE MOTION FOR
ALTERNATIVE SERVICE - 1

## I. BACKGROUND

Plaintiffs Amazon.com, Inc. ("Amazon") and Dutch Blitz Acquisition Corporation ("Dutch Blitz") bring claims against a number of Defendants for allegedly selling counterfeit products on Amazon.com that mimic Dutch Blitz's proprietary card games. Dkt. No. 16, at 2 (Motion); Dkt. No. 1 ¶ 1 (Complaint). Plaintiffs allege Defendants used Amazon Selling Accounts to unlawfully advertise, market, and sell these counterfeit products. Dkt. No. 16, at 2; Dkt. No. 1 ¶ 33.

Plaintiffs filed the present Motion (Dkt. No. 16), along with two supporting declarations (the "Farrell Declaration" and the "Commerson Declaration," respectively) (Dkt. Nos. 17, 18), on August 10, 2021. In the Motion, Plaintiffs also cite to the Complaint (Dkt. No. 1) and an earlier declaration they had filed with an earlier *ex parte* motion for an extension of time to serve Defendants (the "Prior Commerson Declaration") (Dkt. No. 13), all of which the Court has reviewed for the purposes of considering the present Motion.

Plaintiffs first attempted to serve Defendants at addresses in the United States associated with Defendants' Amazon Selling Accounts and ultimately determined that these addresses were likely false or invalid.[1] Prior Commerson Decl. ¶¶ 2–7. Subsequently, Amazon reviewed Defendants' Amazon Selling Accounts "and uncovered that Defendants used Chinese billing addresses and bank accounts based in China." Farrell Decl. ¶ 8. Amazon believes that Defendants provided U.S. addresses "in an effort to obscure and conceal their true whereabouts" and that Defendants are, in fact, located in China. Prior Commerson Decl. ¶¶ 8–9.

---

[1] Of the Defendants that Plaintiffs seek to serve, there appears to have been no prior attempt to serve Defendant "Doe Defendant 1." *Compare* Prior Commerson Decl. ¶¶ 2–7, *with* Commerson Decl. ¶ 2. *See also* Dkt. No. 16, at 2 n.2 (explaining relevance of "Doe Defendant").

Amazon also located email addresses associated with Defendants' Amazon Selling Accounts. Farrell Decl. ¶ 6 (listing emails).[2] Plaintiffs vaguely state that "[t]he primary means of communication[] between Amazon and the person or persons operating Defendants' Amazon Selling Accounts were conducted via those email addresses." Farrell Decl. ¶ 7.

Based on the foregoing, Plaintiffs ask this Court for leave, under Federal Rule of Civil Procedure 4(f)(3) ("Rule 4(f)(3)"), to serve Defendants through the email addresses associated with Defendants' Amazon Selling Accounts.

## II. LEGAL STANDARD

Service of process on an individual—or any corporation, partnership, or other unincorporated association, *see* Fed. R. Civ. P. 4(h)(2)—outside the United States is governed by Federal Rule of Civil Procedure 4(f). The rule provides that such service may occur:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; [or]
>
> . . .
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

Rule 4(f)(1) references the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the "Hague Convention"), *opened for signature* Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. 6638, an international treaty that governs service of process among nations that are party to the Convention, including China and the United States. *See* Status Table,

---

[2] The Court notes that Defendant Zhangzhenzhen d/b/a Soomi Lee and his/her email address are not listed among the email addresses associated with the Amazon Selling Accounts in the Farrell Declaration but are listed in the Commerson Declaration. *Compare* Farrell Decl. ¶ 6 *with* Commerson Decl. ¶ 2.

ORDER DENYING PLAINTIFFS'
EX PARTE MOTION FOR
ALTERNATIVE SERVICE - 3

HCCH, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last updated June 17, 2021) (listing parties to the Hague Convention). The primary method of service under the Hague Convention is for each signatory country to establish a Central Authority, which serves as a channel for receiving requests for and handling service of process within the country. *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698–99 (1988) (explaining the Hague Convention); *Rubie's Costume Co. v. Yiwu Hua Hao Toys Co.*, 2019 WL 6310564, at *2 (W.D. Wash. Nov. 25, 2019) (same). The Hague Convention does not apply "where the address of the person to be served with the document is not known," and it lists certain other exceptions in cases of urgency or where service through a Central Authority is delayed or unsuccessful. Hague Convention arts.1, 15.

Any method of service under U.S. law must comport with constitutional notions of due process and must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

### III. DISCUSSION

The Ninth Circuit has "commit[ted] to the sound discretion of the district court the task of determining when the particularities and necessities of a given case require alternate service of process under Rule 4(f)(3)." *Rio Props, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002). The party requesting alternate service must "demonstrate that the facts and circumstances of the present case necessitate[] the district court's intervention." *Id.* "Courts consider a variety of factors when evaluating whether to grant relief under Rule 4(f)(3)[,] including whether the plaintiff identified a physical address for the defendant, whether the defendant was evading service of process, and whether the plaintiff had previously been in contact with the defendant." *Rubie's Costume Co.*, 2019 WL 6310564, at *2. Rule 4's various requirements for service of

process are more than mere "technicalities," *see* Dkt. No. 16, at 3, and the desire for expedience and efficiency alone is not sufficient to justify alternative service. *See, e.g.*, *U.S. Aviation Underwriters, Inc. v. Nabtesco Corp.*, 2007 WL 3012612, at *2 (W.D. Wash. Oct. 11, 2007).

Plaintiffs acknowledge that, as Defendants are presumed to be located in China and China is a signatory to the Hague Convention, the Hague Convention is relevant here. *See* Dkt. No. 16, at 3. Plaintiffs are not required to have attempted Hague Convention service under Rule 4(f)(1) before seeking service under Rule 4(f)(3). *See Rio Props., Inc.*, 284 F.3d at 1015 ("[C]ourt-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) . . . . [S]ervice of process under Rule 4(f)(3) is neither a 'last resort' nor extraordinary relief.'" (quoting *Forum Fin. Grp., LLC v. President & Fellows of Harvard Coll.*, 199 F.R.D. 22, 23 (D. Me. 2001))). Nonetheless, courts are divided on the precise effect of the Hague Convention, if any, on any applicable service under Rule 4(f)(3).[3] Some courts, for example, view Rule 4(f)(3) as a separate, alternative means of service outside of the Hague Convention. *See, e.g.*, *Rubie's Costume Co.*, 2019 WL 6310564, at *2 (evaluating Rule 4(f)(3) service as an alternative to the Hague Convention, as long as the alternative means is not prohibited by the Convention). A minority of courts, however, have noted that the Hague Convention is binding federal law and that its provisions govern *all* service of process, even under Rule 4(f)(3), where service is to occur in a country that is a party to the Convention. *See, e.g.*, *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 480 F. Supp. 3d 977, 983–87 (N.D. Cal. 2020) (holding that the Hague Convention is "mandatory" and service under Rule 4(f)(3) must comply); *see also Schlunk*, 486 U.S. at 705 ("[C]ompliance with the Convention is mandatory in all cases to which it applies . . . ."); *id.* at 710 (Brennan, J., concurring) ("[T]he

---

[3] The Hague Convention did not apply in *Rio Properties, Inc.*, where defendants were located in Costa Rica, which is not a party to the Convention. *See* 284 F.3d at 1015 n.4.

ORDER DENYING PLAINTIFFS'
EX PARTE MOTION FOR
ALTERNATIVE SERVICE - 5

Convention prescribes the exclusive means for service of process emanating from one contracting nation and culminating in another.").

Even if Rule 4(f)(3) were to provide a means of bypassing service under the Hague Convention, no Rule 4(f)(3) service is permitted if the Convention prohibits it. *See* Fed. R. Civ. P. 4(f)(3) (alternative service only permitted if "not prohibited by international agreement"). Yet again, courts are divided on whether an objection by a signatory country to Article 10 of the Hague Convention, which otherwise expressly permits service of process by mail, *see Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1513 (2017), means that the Convention prohibits service of process by email. *Compare Agha v. Jacobs*, 2008 WL 2051061, at *2 (N.D. Cal. May 13, 2008) (email service prohibited by the Hague Convention because Germany's objection to service by mail under Article 10 is not distinguishable from service by email), *with Rubie's Costume Co.*, 2019 WL 6310564, at *3 (noting China's objection to Article 10 of the Hague Convention and citing cases finding that email service is not precluded by such objection).

The Court finds it unnecessary to resolve these issues, however, because here, Plaintiffs have wholly failed at this juncture to "demonstrate that the facts and circumstances of the present case necessitate the district court's intervention." *See Rio Props, Inc.*, 284 F.3d at 1016. The Court finds this case distinguishable from the cases cited by Plaintiffs—and other comparable cases that the Court has reviewed—for three main reasons: (1) defendant's addresses were unknown; (2) plaintiffs demonstrated defendants had actual notice of the lawsuits to support the argument that defendants were evading service; or (3) plaintiffs pointed to recent communications with defendants that demonstrated the reliability of the proposed form of alternative service.

In all the cases relied on by Plaintiffs, physical addresses for defendants could not be located. *See Keck v. Alibaba.com, Inc.*, 2018 WL 3632160, at *3 (N.D. Cal. July 31, 2018)

(physical addresses of defendants could not be located); *Bright Sols. for Dyslexia, Inc. v. Lee*, 2017 WL 10398818, at *7 (N.D. Cal. 2017) ("Defendants structured their counterfeit business such that they could *only* be contacted by email." (emphasis added)), *report and recommendation adopted*, 2018 WL 4927702 (N.D. Cal. 2018); *Toyo Tire & Rubber Co. v. CIA Wheel Grp.*, 2016 WL 1251008, at *3 (C.D. Cal. Mar. 25, 2016) (foreign defendants' addresses are unknown); *Facebook, Inc. v. Banana Ads, LLC*, 2012 WL 1038752, at *6 n.2 (N.D. Cal. Mar. 27, 2012) (same). Indeed, in *Rubie's Costume Co.*, a case in this District, the court also examined an application for alternative service on defendants, who were presumed to be located in China, through email and Amazon Seller Accounts and only granted the motion as to defendants who addresses were *unknown*—and denied the motion for defendants with known addresses. 2019 WL 6310564, at *3. This distinction is particularly significant given that none of the concerns discussed above about the Hague Convention is triggered when a defendant's address is unknown. *See* Hague Convention art.1.

Here, Plaintiffs have obtained physical addresses for Defendants: "Amazon . . . uncovered that Defendants used Chinese billing addresses . . . ." Farrell Decl. ¶ 8. But Plaintiffs do not indicate for which Defendants they obtained billing addresses or whether they attempted to verify the billing addresses or locate other addresses for Defendants. In short, Plaintiffs have not made any efforts to show that Defendants' Chinese addresses are incorrect or otherwise inadequate for purposes of serving Defendants. Instead, Plaintiffs argue that email is "the preferred method" of serving Defendants because Defendants have made email "their preferred means of contact." Dkt. No. 16, at 4. But service by email is a *less preferred* means of service than physical service. *See, e.g.*, *Rio Props., Inc.*, 284 F.3d at 1013 (permitting service by email because plaintiff was "[u]nable to serve [defendant] by conventional means," as plaintiff could not obtain defendant's address in Costa Rica).

ORDER DENYING PLAINTIFFS'
EX PARTE MOTION FOR
ALTERNATIVE SERVICE - 7

Plaintiffs have also failed to demonstrate that Defendants may be evading service of process. For example, in *Rio Properties, Inc.*, the Ninth Circuit was faced with a defendant who was aware of the pending litigation against it and seemed to be purposefully evading service: The defendant was a corporate entity that had taken action in response to plaintiff's pre-litigation objections; the defendant's international courier had forwarded the summons and complaint to the defendant's domestic courier; and the defendant's attorney had reached out to the plaintiff to discuss the case, though he declined to accept service on his client's behalf. *See* 284 F.3d at 1012–13. Here, Plaintiffs have not shown that any Defendant might even be aware of the pending action, much less actively evading service. *See also Midmark Corp. v. Janak Healthcare Priv. Ltd.*, 2014 WL 1764704, at *3 (S.D. Ohio May 1, 2014) (service by email was not necessary where defendant was not "playing hide-and-seek with the federal court"). Plaintiffs have not indicated that they have made any attempts to contact Defendants—or counsel, agents, or anyone who might be associated with Defendants. While it appears that Defendants have made it difficult to ascertain their identities and contact information, this is not sufficient to show that Defendants are actively evading service.

Plaintiffs also fail to point to any communication with Defendants that might give the Court some comfort on the appropriateness of alternative service through email. Plaintiffs do not indicate whether they made any attempt to communicate with Defendants over email, through Defendants' Amazon Selling Accounts, or by any other means. At most, Plaintiffs vaguely state that email is "[t]he primary means of communication[]" for Defendants' business on their Amazon Selling Accounts. Dkt. No. 16, at 4; Farrell Decl. ¶ 7; *see also* Dkt. No. 1, ¶¶ 39–45 (allegations describing test purchases of Defendants' counterfeit products). Plaintiffs do not cite to a single instance of an actual email—or any other communication—with a Defendant, nor any efforts to confirm whether any Defendant even monitors these email addresses. *See Keck*, 2018

ORDER DENYING PLAINTIFFS'
EX PARTE MOTION FOR
ALTERNATIVE SERVICE - 8

WL 3632160, at *3 (plaintiff sent test messages to defendants through virtual storefronts or email addresses, where three out of four emails received responses). The Court cannot, based on this scant showing, conclude that Plaintiffs have been previously in contact with Defendants nor that Defendants continue to monitor these email addresses, such that service by email might be warranted and effective.

Finally, whatever the precise legal effect the Hague Convention might have on Rule 4(f)(3) service, the Court may at least consider whether service under the Hague Convention was attempted or otherwise feasible here. *See, e.g.*, *Tevra Brands LLC v. Bayer Healthcare LLC*, 2020 WL 3432700, at *3–4 (N.D. Cal. June 23, 2020) (denying motion for alternative service as premature, where Plaintiffs' non-defective attempt to serve German Defendants under the Hague Convention had only occurred three months prior); *Baliga ex rel. Link Motion Inc. v. Link Motion Inc.*, 385 F. Supp. 3d 212, 220 (S.D.N.Y. 2019) (denying alternative service where no Hague Convention service had been attempted); *Midmark Corp.*, 2014 WL 1764704, at *3 (same).

Here, Plaintiffs provide no explanation as to why they have not attempted service under the Hague Convention, nor any argument as to why such service is not feasible or otherwise would be unwarranted. While Plaintiffs' experience with Defendants' U.S. addresses may indicate some possibility that the Chinese addresses are suspect, this is not enough for the Court to ignore the Chinese addresses altogether. Plaintiffs have not attempted to verify the accuracy of the addresses nor put forth any relevant facts to question the addresses. Plaintiffs do not cite to any issues of urgency, delay from China's Central Authority, or any other factors that might weigh in their favor regarding their failure to attempt Hague Convention service. *See* Fed. R. Civ. P. 4(f) advisory committee's note to 1993 amendment (noting urgency and delay or refusal

by the Central Authority of the receiving country as reasons that might warrant alternative service from the Hague Convention).

Accordingly, based on the presented facts, the Court finds that Plaintiffs have failed to show that alternative service on Defendants through email is warranted at this time. Plaintiffs' Motion is denied without prejudice, and Plaintiffs are ordered to first attempt service on Defendants through the mechanism provided for in the Hague Convention. If Plaintiffs receive no response from China's Central Authority within six months of such attempted service, *see* Hague Convention art.15(2)(b), or other new facts emerge that might warrant the Court's reconsideration, Plaintiffs are invited to move again for alternative service at that time.

As Plaintiffs' Motion is denied on other grounds, the Court finds it unnecessary at this time to decide whether Plaintiffs' proposed means of alternative service satisfies constitutional due process.

### IV. CONCLUSION

For the foregoing reasons, the Motion (Dkt. No. 16) is DENIED without prejudice. Plaintiffs have **sixty (60) days from this Order** to take all steps necessary to serve Defendants in accordance with the Hague Convention, including transmitting the necessary documents to the Central Authority designated by China for such purpose.

IT IS SO ORDERED.

Dated this 17th day of February 2022.

Tana Lin
United States District Judge

ORDER DENYING PLAINTIFFS'
EX PARTE MOTION FOR
ALTERNATIVE SERVICE - 10