1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

11

12

13

14

AMAZON.COM, INC., a Delaware
corporation; and DUTCH BLITZ
ACQUISITION CORPORATION, a
Pennsylvania corporation,

                    Plaintiffs,

        v.

CASE NO. 2:21-cv-00159-TL

ORDER ON MOTION FOR
DEFAULT JUDGMENT AND
PERMANENT INJUNCTION

15

16

17

18

19

ZHENYONG DONG, an individual, d/b/a
REAL VIOLET, EUN ALMONTE,
SOOMI LEE, COLBY WAYNE
CLOTHING LLC, and SILVIA LOPEZ;
and BIBIAO HE, an individual, d/b/a EUN
ALMONTE, SOOMI LEE, SILVIA
LOPEZ, and AMANDA KELLEY,

                    Defendants.

20

21        This is an action for damages and injunctive relief for trademark infringement and related

22    claims involving the "Dutch Blitz" card game. This matter comes before the Court on Plaintiffs

23    Amazon.com, Inc. ("Amazon") and Dutch Blitz Acquisition Corporation ("Dutch Blitz")'s *Ex*

24    *Parte* Motion for Default Judgment and Permanent Injunction against Defendants Zhenyong

1   Dong and Bibiao He. Dkt. No. 61. Defendants have not appeared or responded to the motion.

2   Having reviewed the relevant record, the Court GRANTS IN PART and DENIES IN PART the motion.

3                              I.      BACKGROUND

4          In recent months, the Western District of Washington has seen "numerous cases brought

5   by [Plaintiff Amazon], together with other intellectual property owners, against third parties

6   allegedly facilitating the sale of counterfeit products in the Amazon.com store." General Order

7   03-23, at 1 (Mar. 7, 2023). The cases are referred to collectively as the "Counterfeit Enforcement

8   Actions." *Id.* This is one of those cases.

9          Further, the instant motion is the latest in a series of recent motions for default judgment

10  by Plaintiff Amazon and/or its selling partners that have been handled by courts in this District.

11  *See, e.g.*, *Amazon.com, Inc. v. Wong*, No. C19-990, 2024 WL 553695 (W.D. Wash. Feb. 12,

12  2024) (Robart, J.); *Amazon.com, Inc. v. Dai*, No. C21-170, 2023 WL 6233835 (W.D. Wash.

13  Sept. 26, 2023) (Martinez, J.); *Amazon.com, Inc. v. Sirowl Tech.*, No. C20-1217, 2022 WL

14  19000499 (W.D. Wash. Oct. 3, 2022) (Lasnik, J.); *Amazon.com, Inc. v. White*, No. C20-1773,

15  2022 WL 1641423 (W.D. Wash. May 24, 2022) (Chun, J.); *see also Amazon.com v. Kurth*,

16  No. C18-353, 2019 WL 3426064 (W.D. Wash. July 30, 2019) (Jones, J.).

17  **A.     The Plaintiffs**

18         Plaintiff Amazon is a Delaware corporation with its principal place of business in Seattle,

19  Washington. Dkt. No. 30 ¶ 9. Plaintiff Amazon owns and operates the Amazon.com store

20  ("Amazon Store") and equivalent counterpart international stores and websites. *Id.* ¶ 2. Some

21  products in the Amazon Store are sold directly by Plaintiff Amazon, while others are sold by its

22  third-party selling partners. *Id.*

23         Plaintiff Dutch Blitz is a Pennsylvania corporation with its principal place of business in

24  Erdenheim, Pennsylvania. Dkt. No. 30 ¶ 10. It is currently owned by Mary and Mike Fisher, who

manufacture, advertise, and promote "Dutch Blitz" card game products and related items like expansion packs. *Id.* ¶¶ 4–5; Dkt. No. 63 (Mike Fisher declaration) ¶ 2. The game was created in the 1960s and is now sold at more than 200 different locations in 11 countries, as well as in the Amazon Store. Dkt. No. 30 ¶ 3–4; Dkt. No. 63 ¶ 3. Dutch Blitz is also the owner of registered trademarks for DUTCH BLITZ, Registration No. 2,912,513, and A VONDERFUL GOOT GAME!, Registration No. 4,772,211 (together, the "Dutch Blitz Trademarks"). Dkt. No. 30 ¶ 6; Dkt. No. 63 ¶ 4; *see also* Dkt. No. 30-1 at 1–9 (trademarks).

**B.    The Allegations**

**1.    The Amazon Store**

Between 2019 and 2020, Defendants established six Amazon Store selling accounts (the "Selling Accounts"). Dkt. No. 30 ¶ 33. To become a third-party seller in the Amazon Store, sellers are required to agree to the Amazon Services Business Solutions Agreement ("BSA"), which governs the seller's access to and use of Plaintiff Amazon's services and states Plaintiff Amazon's rules for selling in the Amazon store. *Id.* ¶ 34. By entering into the BSA, each seller represents and warrants that it "will comply with all applicable Laws in [the] performance of [its] obligations and exercise of [its] rights" under the BSA. *Id.*; *see* Dkt. No. 30-1 at 10–38 (BSA).

Under the terms of the BSA, Plaintiff Amazon identifies the sale of counterfeit goods as "deceptive, fraudulent, or illegal activity" in violation of its policies, reserving the right to withhold payments and terminate the selling account of any bad actor who engages in such conduct. Dkt. No. 30 ¶ 35; Dkt. No. 30-1 ¶¶ 2–3. The BSA requires the seller to defend, indemnify, and hold harmless Plaintiff Amazon against any claims or losses arising from the seller's "actual or alleged infringement of any Intellectual Property Rights." Dkt. No. 30-1 ¶ 6.1.

The BSA also incorporates Plaintiff Amazon's Anti-Counterfeiting Policy, which expressly prohibits the sale of counterfeit goods in the Amazon Store and describes Plaintiff

1    Amazon's commitment to preventing the sale and distribution of counterfeit goods in the

2    Amazon Store as well as the consequences of doing so. Dkt. No. 30 ¶¶ 36–37; *see* Dkt. No. 30-1

3    at 39–41 (policy).

4           **2.**       **Defendants' Selling Accounts**

5           Plaintiff Dutch Blitz (with assistance from Plaintiff Amazon) conducted multiple test

6    purchases from various Selling Accounts in the Amazon Store and determined that the products

7    are counterfeit and bear a counterfeit Dutch Blitz registered trademark. Dkt. No. 30 ¶ 39; *see id.*

8    ¶¶ 41 (Real Violet), 43 (Amanda Kelley), 45–46 (Colby Wayne Clothing LLC), 48 (Eun

9    Almonte), 50 (Soomi Lee), 52 (Silvia Lopez); *see also* Dkt. No. 63 ¶¶ 5–10. Plaintiff Dutch Blitz

10   determined that the products departed significantly from the authentic products in four respects:

11   (1) the games lack certain information on the back; (2) the playing cards are printed in a different

12   manner; (3) the game instructions are printed in a different manner; and (4) the game packaging

13   differs in color. *Id.* ¶ 54; *see also* Dkt. No. 63 ¶ 11 (the counterfeit products were "materially

14   different than and significantly lower quality than Dutch Blitz's genuine products"). The Selling

15   Accounts sold identical counterfeit products, differing from authentic products in the same

16   manner. *Id.* ¶ 55.

17          Through subpoena productions from third-party payment service provider Payoneer Inc.

18   ("Payoneer"), Plaintiffs confirmed that proceeds from the above Selling Accounts were sent to

19   Payoneer accounts controlled by Defendants. Dkt. No. 62 (Commerson declaration) ¶ 2. After

20   Plaintiff Amazon confirmed the counterfeit sales, it blocked the Selling Accounts from further

21   sales in the Amazon Store. Dkt. No. 30 ¶ 58; Dkt. No. 64 (Haskel declaration) ¶¶ 6, 9, 12.

22   **C.**    **Procedural History**

23          On February 9, 2021, Plaintiffs commenced four separate actions, which were

24   consolidated into the instant action. Dkt. No. 1; *see also* Dkt. No. 11 (consolidation order); Dkt.

ORDER ON MOTION FOR
DEFAULT JUDGMENT AND
PERMANENT INJUNCTION - 4

No. 30 (First Amended Complaint). In the process of discovery, Plaintiffs identified Dong and

He as relevant parties. Dkt. No. 62 (Commerson declaration) ¶ 2. In the FAC, Plaintiffs added

them as Defendants. Dkt. No. 30. On August 30, 2023, Plaintiffs completed alternative service.

Dkt. Nos. 52, 53. Between July 15, 2021, and October 6, 2023, Plaintiffs voluntarily dismissed

most Defendants. *See* Dkt. Nos. 15, 30, 36, 55. On October 13, 2023, the Clerk entered default

against Defendants Dong and He, now the last two remaining Defendants in this action. Dkt. No.

56. On January 12, 2024, Plaintiffs filed the instant motion for default judgment against

Defendants Dong and He, including a request for damages and injunctive relief. Dkt. No. 61.

## II.   LEGAL STANDARD

A court's decision to enter a default judgment is discretionary. *Aldabe v. Aldabe*, 616

F.2d 1089, 1092 (9th Cir. 1980). Default judgment is "ordinarily disfavored," because courts

prefer to decide "cases on their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d

1470, 1472 (9th Cir. 1986) (affirming district court's denial of default judgment). When

considering whether to exercise discretion in entering default judgments, courts may consider a

variety of factors, including:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of a
> plaintiff's substantive claim, (3) the sufficiency of the complaint,
> (4) the sum of money at stake in the action; (5) the possibility of a
> dispute concerning material facts; (6) whether the default was due
> to excusable neglect, and (7) the strong policy underlying the
> Federal Rules of Civil Procedure.

*Id.* at 1471–72. Courts reviewing motions for default judgment must accept the allegations in the

complaint as true, except facts related to the amount of damages. *Geddes v. United Fin. Grp.*,

559 F.2d 557, 560 (9th Cir. 1977). "However, necessary facts not contained in the pleadings, and

the claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co.*

*of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992); *accord Little v. Edward Wolff & Assocs. LLC*,

No. C21-227, 2023 WL 6196863, at *3 (W.D. Wash. Sept. 22, 2023) (quoting *Cripps*). Damages are also limited to what was reasonably pleaded. Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").

### III.   DISCUSSION

**A.   Jurisdiction**

As an initial matter, the Court "has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

The Court finds that it has subject matter jurisdiction in this matter based on Plaintiffs' claims under the Lanham Act. 15 U.S.C. § 1121(a); 28 U.S.C. §§ 1331, 1338(a). The Court also finds that it has supplemental jurisdiction over Plaintiffs' state-law claim under the WCPA. 28 U.S.C. §§ 1332, 1367.

Finally, accepting Plaintiffs' allegations as true, the Court finds that it has personal jurisdiction over Defendants, who "affirmatively undertook to do business with [Plaintiff] Amazon, . . . sold in the Amazon Store products bearing counterfeit versions of the Dutch Blitz Trademarks . . . . [and] caused the shipment of [those products] to consumers in Washington." Dkt. No. 30 ¶ 18. In other words, Defendants "transacted business using a Washington state company as its sales platform, reached out to do business with Washington residents through that platform, and sold counterfeit products to Washington residents," and "Plaintiffs' claims arose from these contacts with Washington state." *Wong*, 2024 WL 553695, at *2; *accord Sirowl Tech.*, 2022 WL 19000499, at *1. Plaintiffs also "entered into an ongoing contractual relationship with a Washington State company . . . and then violated that contractual relationship." *Dai*, 2023 WL 6233835, at *2.[1]

---

[1] The Court thus need not reach Plaintiffs' alternative basis for personal jurisdiction: the presence of a forum selection clause in the BSA. *See* Dkt. No. 61 at 11.

1    **B.      Propriety of Default Judgment**

2           Considering the *Eitel* factors, the Court finds that entry of default judgment is proper.

3           **1.      Factor One: Prejudice to Plaintiffs**

4           Without entry of default judgment Plaintiffs will be prejudiced. Plaintiffs have attempted

5    to litigate this case and vindicate its rights under federal and state law against Defendants. But

6    Defendants have failed to appear or participate in this litigation despite being personally served.

7    "Without default judgment, Plaintiffs will suffer prejudice because they will 'be denied the right

8    to judicial resolution' of their claims and will be 'without other recourse for recovery.'" *Wong*,

9    2024 WL 553695, at *3 (quoting *Elektra Ent. Grp. Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D.

10   Cal. 2005)). This factor favors entry of default judgment.

11          **2.      Factors Two and Three: Merits of Plaintiffs' Claims and Sufficiency of
                    Complaint**

12          Taking the allegations in Plaintiffs' amended complaint as true, Plaintiffs have

13   sufficiently pleaded potentially meritorious claims. *See PepsiCo, Inc. v. Calif. Sec'y Cans*, 238 F.

14   Supp. 2d 1172, 1175 (C.D. Cal. 2002) (explaining how the Ninth Circuit has suggested that these

15   two *Eitel* factors require plaintiffs to state a claim on which they can recover). The Court reviews

16   each claim in turn.

17          **a.      *Claim One: Trademark Infringement***

18          Plaintiff Dutch Blitz brings a claim for trademark infringement against Defendants. Dkt.

19   No. 30 ¶¶ 59–65. To prevail on a claim for trademark infringement under 15 U.S.C. § 1114,

20   Plaintiff Dutch Blitz must show that Defendants used:

21                  (1) a reproduction, counterfeit, copy or colorable imitation of [its]
                    registered trademark, (2) without its consent, (3) in commerce,
22                  (4) in connection with the sale, offering for sale, distribution or
                    advertising of any goods, (5) where such use is likely to cause
23                  confusion, or to cause a mistake or to deceive.

24

1    *Wong*, 2024 WL 553695, at \*4 (quoting *Kurth*, 2019 WL 3426064, at \*2).

2            "Likelihood of confusion exists when consumers viewing the mark would probably

3    assume that the goods it represents are associated with the source of a different product identified

4    by a similar mark." *Id.* (quoting *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408

5    F.3d 596, 608 (9th Cir. 2005)). Courts generally evaluate eight factors to determine whether

6    confusion is likely:

7                    1) the strength of the mark; 2) proximity or relatedness of the
                     goods; 3) the similarity of the marks; 4) evidence of actual
8                    confusion; 5) the marketing channels used; 6) the degree of care
                     customers are likely to exercise in purchasing the goods; 7) the
9                    defendant's intent in selecting the mark; and 8) the likelihood of
                     expansion into other markets.

10   *KP Permanent Make-Up*, 408 F.3d at 608 (citing *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341,

11   348–49 (9th Cir. 1979)). "Where a defendant uses a counterfeit mark, however, courts both

12   within and outside the Ninth Circuit presume a likelihood of consumer confusion." *Id.* (citing

13   *Coach, Inc. v. Pegasus Theater Shops*, No. C12-1631, 2013 WL 5406220, at \*3 (W.D. Wash.

14   Sept. 25, 2013) (compiling cases)). A "counterfeit" is "a spurious mark which is identical with,

15   or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

16           Here, Plaintiff Dutch Blitz alleges that it owns the trademarks DUTCH BLITZ,

17   Registration No. 2,912,513, and A VONDERFUL GOOT GAME!, Registration No. 4,772,211.

18   Dkt. No. 30 ¶ 6; Dkt. No. 63 ¶ 4; *see also* Dkt. No. 30-1 at 1–9 (copies of registration certificates

19   from the United States Patent and Trademark Office for the Dutch Blitz Trademarks).

20   Defendants advertised, marketed, offered, and sold, without authorization, counterfeit Dutch

21   Blitz products bearing the Dutch Blitz Trademarks. Dkt. No. 30 ¶¶ 7, 56, 63; *see also id.* ¶¶ 39–

22   52 (identifying the Selling Accounts and describing test purchases made from those accounts);

23   Dkt. No. 63 ¶¶ 5–11 (same); Dkt. No. 62 ¶ 2 (identifying Defendants as owners of Payoneer

accounts connected to the Selling Accounts). Accepting these allegations as true, the Court finds

that it is likely that a reasonable consumer would confuse the products sold through Defendants'

Selling Accounts in the Amazon Store with genuine Dutch Blitz products. Therefore, Plaintiff

Dutch Blitz has stated a claim against Defendants for trademark infringement in violation of

§ 1114(1)(a), and the second and third *Eitel* factors weigh in favor of entry of default judgment

on that claim.

### b. *Claims Two and Three: False Designation of Origin and False Advertising*

Both Plaintiffs bring claims for false designation of origin under 15 U.S.C.

§ 1125(a)(1)(A) and false advertising under 15 U.S.C. § 1125(a)(1)(B). Dkt. No. 30 ¶¶ 66–74

(Claim Two by Dutch Blitz), ¶¶ 75–81 (Claim Three by Amazon).

To state a claim for false designation of origin, each Plaintiff must allege that Defendants

"(1) used in commerce (2) any word, false designation of origin, false or misleading description,

or representation of fact, which (3) is likely to cause confusion or mistake, or to deceive, as to

sponsorship, affiliation, or the origin of the goods or services in question." *Wong*, 2024 WL

553695, at *5 (quoting *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1170 (N.D. Cal.

2015)). "Although [Plaintiff Dutch Blitz] is the trademark holder in this case and not

Amazon.com, under § 1125(a), '"any person who believes that he or she is likely to be damaged"

by a defendant's false advertising' may sue." *Dai*, 2023 WL 6233835, at *3 (quoting *Lexmark

Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014)).

To state a claim for false advertising, each Plaintiff must allege:

> (1) a false statement of fact by the defendant in a commercial
> advertisement about its own or another's product; (2) the statement
> actually deceived or has the tendency to deceive a substantial
> segment of its audience; (3) the deception is material, in that it is
> likely to influence the purchasing decision; (4) the defendant
> caused the false statement to enter interstate commerce; and (5) the

> plaintiff has been or is likely injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Wong*, 2024 WL 553695, at *5 (quoting *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012)). To constitute a statement made in a commercial advertisement, the statement must be:

> (1) commercial speech; (2) by the defendant who is in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a 'classic advertising campaign,' but may consist instead of more informal types of 'promotion,' the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry.

*Wong*, 2024 WL 553695, at *6 (quoting *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1054 (9th Cir. 2008)).

### (1)   Plaintiff Dutch Blitz

Here, Plaintiff Dutch Blitz alleges that Defendants sold counterfeit Dutch Blitz products bearing the Dutch Blitz Trademarks. Dkt. No. 30 ¶¶ 7, 39–52, 56, 63; Dkt. No. 63 ¶¶ 5–11; Dkt. No. 62 ¶ 2. Defendants also engaged in commercial advertising or promotion of those counterfeit products. Dkt. No. 30 ¶ 33, 39, 69–70. This unauthorized misuse of the Dutch Blitz Trademarks deceived customers into believing that the products were authentic when they were actually counterfeit. Dkt. No. 30 ¶¶ 7–8, 57, 70. The advertising, marketing, and selling of products bearing the counterfeit versions of the Dutch Blitz Trademarks were used to compete unfairly with Dutch Blitz (*id.* ¶ 70), resulting in tens of thousands of dollars in sales to competitors of Plaintiff. *See infra* Section III.C. Therefore, Plaintiff Dutch Blitz has stated claims for both false designation of origin and false advertising. *See Wong*, 2024 553695, at *5 (holding the same); *White*, 2022 WL 1641423, at *3 (same).

(2)   Plaintiff Amazon

Plaintiff Amazon alleges that Defendants deceived Plaintiff Amazon about the authenticity of the products they were advertising, marketing, offering, and selling, in violation of the BSA and Plaintiff Amazon's Anti-Counterfeiting Policies. Dkt. No. 30 ¶¶ 8, 33–38, 77; Dkt. No. 30-1 at 10–41; *see also* Dkt. No. 30 ¶¶ 22–30 (describing Plaintiff Amazon's efforts to address the sale of counterfeit goods in its stores). Defendants' acts undermine and jeopardize consumer trust in Plaintiff Amazon and its Amazon Store. *Id.* ¶¶ 76, 80. Therefore, Plaintiff Amazon has stated a claim for false designation of origin. *See Dai*, 2023 WL 6233835, at *3 (holding the same); *Sirowl Tech.*, 2022 WL 19000499, at *3 (same), *White*, 2022 WL 1641423, at *3 (same).

However, Plaintiff Amazon does not allege that it is "in commercial competition" with Defendants. *See* Dkt. No. 30 ¶¶ 75–81. Instead, it alleges that "Defendants' deceptive acts were material to [Plaintiff] Amazon's decision to allow Defendants to sell their products in the Amazon Store because [Plaintiff] Amazon would not have allowed Defendants to do so but for their deceptive acts." *Id.* ¶ 77. Plaintiff Amazon has thus not stated a claim for false advertising.[2] *See Wong*, 2024 WL 553695, at *6 (holding the same). Therefore, as to Plaintiff Amazon's claim of false advertising, Plaintiffs' motion is DENIED, and the claim with respect to Plaintiff Amazon is DISMISSED.

### c.   *Claim Four: Violation of WCPA*

Plaintiffs jointly bring a claim under the Washington Consumer Protection Act ("WCPA"). Dkt. No. 30 ¶¶ 82–86. To state a claim under the WCPA, Plaintiffs must allege

---

[2] Some courts in this District appear to have analyzed claims of false designation of origin and false advertising under the same elements. *See, e.g.*, *Dai*, 2023 WL 6233835, at *3; *Sirowl Tech.*, 2022 WL 19000499, at *2. Those courts listed the elements for a false designation of origin claim but did not review the elements of a false advertising claim, which are distinct from each other.

"(1) an unfair or deceptive act or practice; (2) occurring in the conduct of trade or commerce; (3) affecting the public interest; (4) injuring its business or property; and (5) a causal link between the unfair or deceptive act and the injury suffered." *Dai*, 2023 WL 6233835, at *4 (quoting *BBC Grp. NV LLC v. Island Life Rest. Grp. LLC*, No. C18-1011, 2020 WL 758070, at *2 (W.D. Wash. Feb. 14, 2020)). "Absent unusual circumstances, the analysis of a CPA claim will follow that of the [federal] trademark infringement and unfair competition claims; it will turn on the likelihood of confusion regarding a protectable mark." *Id.* (quoting *Safeworks, LLC v. Teupen Am., LLC*, 717 F. Supp. 2d 1181, 1192 (W.D. Wash. 2010)). Here, "[b]ecause analysis of a CPA claim tracks that for a federal trademark claim, and there do not appear to be any unusual circumstances dictating a different result, Plaintiffs have already demonstrated the basis for their CPA claim." *Id.* Therefore, Plaintiffs have stated a claim under the WCPA.

### 3.      Factor Four: Sum of Money at Stake

Given the substantial sums that are at stake and the seriousness of the alleged misconduct, this factor favors entry of default judgment. See *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1212 (W.D. Wash. 2014) (stating that this factor accounts for "the amount of money requested in relation to the seriousness of the defendant's conduct, whether large sums of money are involved, and whether the recovery sought is proportional to the harm caused by defendant's conduct" (internal citations and quotation omitted)).

### 4.      Factor Five: Possibility of Dispute of Material Facts

There is little possibility that the core, material facts are in dispute. "When default has been entered, courts find that there is no longer the possibility of a dispute concerning material facts because the court must take the plaintiff's factual allegations as true." *Curtis*, 33 F. Supp. 3d at 1212. Not only have Defendants failed to appear in this action, but Plaintiffs have provided

1   detailed evidence in support of its claims that is likely difficult to be rebutted. There is no

2   evidence suggesting a dispute could arise. This factor favors entry of default judgment.

3         **5.**      **Factor Six: Whether Default Is Due to Excusable Neglect**

4         There is no evidence that Defendants' failure to appear is due to excusable neglect.

5   Indeed, Plaintiffs provide evidence that shows Defendants were properly served yet have still

6   failed to appear in this action. *See* Dkt. Nos. 52–53. This factor favors entry of default judgment.

7         **6.**      **Factor Seven: Strong Policy in Favor of Decision on the Merits**

8         The Court maintains a strong policy preference in favor of resolution of Plaintiffs' claims

9   on the merits. "Where, as here, a defendant fails to appear or defend itself in the action, however,

10   the policy favoring decisions on the merits is not dispositive." *Wong*, 2024 WL 553695, at *7

11   (citing *PepsiCo*, 238 F. Supp. 2d at 1177). Defendants' decision not to appear in this case vitiates

12   against this policy. This factor favors entry of default judgment.

13         Therefore, Plaintiffs' motion for default judgment is GRANTED IN PART as to all claims but

14   Plaintiff Amazon's claim for false advertising, which is DISMISSED, and judgment is ENTERED as

15   to those claims.

16   **C.**      **Statutory Damages for Plaintiff Dutch Blitz**

17         "Under the Lanham Act, a plaintiff may elect whether to recover its actual damages

18   caused by the defendants' use of a counterfeit mark or statutory damages." *Wong*, 2024 WL

19   553695, at *7 (citing 15 U.S.C. § 1117(c)). A plaintiff may recover statutory damages of not less

20   than $1,000 or more than $200,000 per infringed mark. 15 U.S.C. § 1117(c)(1). However, "[i]f

21   the court finds that a defendant's use of a counterfeit mark was willful, it has discretion to award

22   statutory damages of 'not more than $2,000,000 per counterfeit mark per type of goods or

23   services sold, offered for sale, or distributed, as the court considers just.'" *Wong*, 2024 WL

24   553695, at *7 (quoting 15 U.S.C. § 1117(c)(2)). "[S]tatutory damages may compensate the

ORDER ON MOTION FOR
DEFAULT JUDGMENT AND
PERMANENT INJUNCTION - 13

victim, penalize the wrongdoer, deter future wrongdoing, or serve all of those purposes."

*Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1008 (9th Cir. 2023). "The plaintiff, however, 'is

not entitled to a windfall.'" *Wong*, 2024 WL 553695, at *1 (quoting *Yelp Inc. v. Catron*, 70 F.

Supp. 3d 1082, 1102 (N.D. Cal. 2014)). Because Plaintiff Dutch Blitz has alleged the willful

infringement of two trademarks (*see* Dkt. No. 30 ¶¶ 7, 13–14, 39, 56, 63), the Court may award

up to $4,000,000 in statutory damages.

Here, Plaintiff Dutch Blitz seeks statutory damages totaling only $193,233. Dkt. No. 61

at 24; Dkt. No. 61-1 (proposed order) at 2. The request is broken down by each Defendant:

- As to Defendant Dong, an award of $100,071 or three times the aggregate sales of $33,357 from the Real Violet and Colby Wayne Clothing LLC accounts;

- As to Defendant He, an award of $35,232, or three times the aggregate sales of $11,744 from the Amanda Kelley account; and

- As to both Defendants jointly and severally, an award of $57,930, or three times the aggregate sales of $19,310 from the Eun Almonte, Soomi Lee, and Silvia Lopez accounts.

Dkt. No. 61 at 22–24; *see* Dkt. No. 64 ¶¶ 7, 10, 12 (stating that "[Plaintiff] Amazon's records

reflect" the aggregate sales amounts).

The Court finds that Plaintiff Dutch Blitz's request is appropriate and just. Defendants

engaged in an intentional and coordinated effort to sell counterfeit Dutch Blitz products in the

Amazon Store, thus deceiving customers, misusing Plaintiff Dutch Blitz's trademarks, depriving

Plaintiff Dutch Blitz of sales, and tarnishing the reputation of both Plaintiffs. *See* Dkt. No. 30

¶¶ 33, 39–58. Plaintiff Dutch Blitz's damages request is thus "consistent with the amounts

awarded by other courts in this District for similar conduct, proportional to [Plaintiff's] actual

damages, and sufficient to deter [Defendants] from further willful infringement, but is not so

great as to result in a windfall for [Plaintiff]." *Wong*, 2024 WL 553695, at *8; *see also Dai*, 2023

WL 6233835, at *5 (awarding the same); *Sirowl Tech.*, 2022 WL 19000499, at *5 (same); *White*, 2022 WL 1641423, at *5 (same).

Therefore, the Court AWARDS Plaintiff Dutch Blitz the requested total amount of $**193,233** in statutory damages, as distributed above between Defendants.

**D.     Permanent Injunction for Both Plaintiffs**

The Lanham Act authorizes "the 'power to grant injunctions accordingly to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right' of the trademark owner." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006). The WCPA similarly authorizes injunctions against violations of the statute. RCW 19.86.090.

In trademark cases, courts apply "traditional equitable principles" in deciding whether to grant permanent injunctive relief. *Reno*, 452 F.3d at 1137 (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 393 (2006)). That is, a plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* at 1137 n.11 (quoting *eBay*, 547 U.S. at 391). A trademark holder is entitled to a rebuttable presumption of irreparable harm upon a finding of a violation. 15 U.S.C. § 1116(a).

Plaintiffs seek a permanent injunction enjoining Defendants from their infringing uses of the Dutch Blitz trademarks. Dkt. No. 61 at 24–29; Dkt. No. 61-1 at 2–3. Specifically, Plaintiffs seek an order:

> permanently enjoining Defendants, their agents, representatives, servants, employees, and attorneys, and all others in active concert or participation with them, from:

a. selling counterfeit or infringing products in any Amazon store;

b. selling counterfeit or infringing products to Amazon or any Amazon affiliate;

c. manufacturing, importing, distributing, offering to sell, or selling any product using the Dutch Blitz Brand or the Dutch Blitz Trademarks, or which otherwise infringes Dutch Blitz's intellectual property, in any store or in any medium; and

d. assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities listed in (a) through (c) above.

*Id.* at 24–25. Plaintiffs argue that all four *eBay* factors weigh in favor of a permanent injunction. *See id.* at 27–29. The Court agrees.

First, Plaintiffs are entitled to a rebuttable presumption of irreparable harm, as they have alleged (and the Court accepts as true) that Defendants have committed trademark infringement and false designation of origin, among other claims. *See* 15 U.S.C. § 1116(a). Defendants present no evidence to rebut this presumption, and the Court finds no such evidence in the record.

Second, remedies at law are inadequate to compensate Plaintiffs, who have alleged harm to their reputation and goodwill. "Harm resulting from lost customer goodwill 'is neither easily calculable, nor easily compensable' and thus cannot be remedied by a monetary award." *Wong*, 2024 WL 553695, at *10 (quoting *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1066 (N.D. Cal. 2000)). Moreover, Defendants' failure to appear "suggests that their infringing behavior may continue absent an injunction." *Id.* (citing *Amazon.com Inc. v. Robojap Techs. LLC*, No. C20-694, 2021 WL 5232130, at *4 (W.D. Wash. Nov. 10, 2021)).

Third, the balance of hardships strongly favors Plaintiffs. Without an injunction, Plaintiffs may suffer further harm to their reputation through counterfeit sales. "On the other hand, because Defendants never had a right to infringe [Plaintiff Dutch Blitz's] trademarks in the

1    first place, they will suffer no harm from an injunction prohibiting unlawful infringement in the

2    future." *Id.* (citing *Eve Nev., LLC v. Derbyshire*, No. C21-251, 2022 WL 279030, at *9 (W.D.

3    Wash. Jan. 31, 2022)); *see also T-Mobile USA, Inc. v. Terry*, 862 F. Supp. 2d 1121, 1133 (W.D.

4    Wash. 2012) (holding defendants had "no legitimate interest in" continuing deceptive conduct).

5         Finally, a permanent injunction would serve the public interest "in protecting trademark

6    holders' rights and minimizing the confusion caused by the presence of counterfeit products in

7    the marketplace." *Wong*, 2024 WL 553695, at *10 (citing *Treemo, Inc. v. Flipboard, Inc.*, 53 F.

8    Supp. 3d 1342, 1368 (W.D. Wash. 2014)).

9         Therefore, the Court PERMANENTLY ENJOINS Defendants on the terms requested.

10                    **IV.    CONCLUSION**

11        Accordingly, it is hereby ORDERED:

12    (1)    Plaintiffs' Motion for Default Judgment and Permanent Injunction Against

13           Defendants Zhenyong Dong and Bibiao He (Dkt. No. 61) is GRANTED IN PART and

14           DENIED IN PART.

15    (2)    Judgment is ENTERED as to all claims except for Plaintiff Amazon's claim for

16           false advertising, which is DISMISSED.

17    (3)    Plaintiff Dutch Blitz is AWARDED statutory damages of $193,233 as follows:

18           (a)    $100,071 against Defendant Zhenyong Dong for counterfeit sales from the

19                  Real Violet and Colby Wayne Clothing LLC Selling Accounts;

20           (b)    $35,232 against Defendant Bibiao He for counterfeit sales from the

21                  Amanda Kelley Selling Account; and

22           (c)    $57,930 against both Defendants, jointly and severally, for counterfeit

23                  sales from the Eun Almonte, Suomi Lee, and Silvia Lopez Selling

24                  Accounts.

(4)     Defendants and their officers, agents, representatives, servants, employees, and attorneys, and all others in active concert or participation with them who receive actual notice of the order, are PERMANENTLY ENJOINED from:

(a)     selling counterfeit or infringing products in any Amazon store;

(b)     selling counterfeit or infringing products to Amazon or any Amazon affiliate;

(c)     manufacturing, importing, distributing, offering to sell, or selling any product using Dutch Blitz's brand or trademarks, or which otherwise infringes Dutch Blitz's intellectual property, in any store or in any medium; and

(d)     assisting, aiding, or abetting any other person or business entity in engaging or performing any of the activities listed in (a) through (c) above.

(5)     The Court RETAINS jurisdiction over this case for the purpose of enforcing this Order and Injunction, and for any supplemental proceedings that may be authorized by law.

(6)     Plaintiffs' counsel is DIRECTED to serve a copy of this Order and Injunction on Defendants' last known email addresses registered with Payoneer Inc., which Plaintiffs used to complete service.

Dated this 26th day of February 2024.

Tana Lin
United States District Judge

ORDER ON MOTION FOR
DEFAULT JUDGMENT AND
PERMANENT INJUNCTION - 18